# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-00626-DME-KLM

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

BIG BIRDS, LLC,
DAVE'S MARKET, LLC,
DAVID PAIGE,
JUDAH HOLLAND, and
JOHN DOES 1-10, individually or as corporate entities,

      Defendants.

---

## ORDER DENYING MOTION TO DISMISS (Doc. 23)

---

This matter comes before the Court on Defendants' Fed. R. Civ. P. 12(b) motion to dismiss Plaintiffs' amended complaint because the Court lacks personal jurisdiction over Defendants and, in any event, Plaintiffs have failed to state any claim upon which relief can be granted.  (Doc. 23.)  For the reasons that follow, the Courts DENIES that motion.

## I. Background

Briefly stated, Plaintiffs Otter Products, LLC and Treefrog Developments, Inc. (collectively "Otter"), manufacture and sell cases and accessories for electronic devices, as well as outdoor products.  Otter alleges that Defendants—two Maryland companies (Big Birds, LLC and Dave's Market, LLC) and two individual Maryland residents who

1

control those two companies (David Page and Judah Holland)—operate storefronts on www.amazon.com ("Amazon") through which Defendants resell Otter products, in violation of federal and Colorado law.

## II. Personal jurisdiction

Defendants first move to dismiss Otter's amended complaint under Fed. R. Civ. P. 12(b)(2), asserting this Court lacks personal jurisdiction over them because Defendants have no physical presence in Colorado.[1]  Because Otter asserts only specific (and not general) jurisdiction, Otter must show that (1) Defendants "purposely directed [their] activities at residents" of Colorado, and (2) Otter's injuries arise out of Defendants' Colorado-related activities.  Old Republic Ins. Co. v. Continental Motors, Inc., 877 F.3d 895, 904 (10th Cir. 2017).

Otter sufficiently alleges that Defendants purposely directed activity in Colorado by selling products that infringe Otter's trademarks in Colorado to Colorado residents. Otter allege that Defendants "have made substantial and regular sales of infringing products bearing Plaintiffs' trademarks to Colorado," both before and after November 5, 2018, and then, in the amended complaint, specifically listed, by way of example, at least fifty such sales occurring between November 5, 2018 and February 14, 2019. (Doc. 21 ¶ 24.)  Otter additionally alleges that Defendants "continue to regularly sell[] a

---

[1] Although the Court must have personal jurisdiction over each Defendant, see Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1020 (10th Cir. 1990), Defendants have made only a collective argument that the Court lacks personal jurisdiction over them as a group.  The Court, therefore, will address its jurisdiction over Defendants in that same manner.

high volume of other infringing products bearing Plaintiffs' trademarks into Colorado and to Colorado residents."  (Id. ¶ 25.)  Those allegations are sufficient to make a prima facie showing that Defendants have purposely directed activity in Colorado, and that Otter's claims arise from that activity.[2]  See Old Republic, 877 F.3d at 903 (requiring plaintiff to make "only . . . prima facie showing of personal jurisdiction to defeat [Rule 12(b)(2)] motion" when court decides motion on pleadings without evidentiary hearing (internal quotation marks omitted)).

Defendants contend that it was Plaintiffs themselves who made all of these purchases.  Even if that is so, Defendants still voluntarily and knowingly made these sales to a Colorado resident, thus purposely directing their activity to Colorado; these sales cannot be said to be the result of Otter's unilateral actions.  See Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 8-9 (1st Cir. 2018)[3]; cf. Medinfo, Inc. v. MedTool LLC, No. 15-cv-00260-MEH, 2015 WL 3542712, at *3 (D. Colo. June 5, 2015) (unreported) (agreeing "that one sale to the forum jurisdiction, when it is to the patent holder's

---

[2] See Otter Prods. LLC v. Wang, No. 18-cv-03198-CMA-SKC, 2019 WL 1403022, at *3 (D. Colo. Mar. 28, 2019); see also, e.g., Four Winds Interactive LLC v. 22 Miles, Inc., No. 16-cv-00704-MSK-STV, 2017 WL 4334074, at *5 (D. Colo. Mar. 28, 2017) (unreported) (holding defendant's offers to sell to ten Colorado residents software that infringed plaintiff's copyright sufficed to create minimum contacts with Colorado, citing supporting case law); Leach v. Pharmedoc Inc., No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (unreported) (holding sale of at least four patent-infringing pillows to Oklahoma residents sufficed to establish minimum contacts with that state).

[3] Although Plixer addressed a foreign corporation's minimum contacts with the United States as a whole, see 905 F.3d at 4-5, the due process analysis there is "nearly identical" to the traditional due process analysis of a litigant's contacts with a forum state, Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1072 (9th Cir. 2017).

counsel, along with the alleged patent infringer's maintaining an interactive website, cannot suffice for personal jurisdiction" (emphasis added)).

Nor does it matter that it is Amazon, and not Defendants, who ultimately ships the infringing goods Defendants sells in Colorado.  See Leach, 2017 WL 943959, at *2; see also Telebrands Corp. v. Mopnado, Civ. Action No. 2:14-07969 (JLL) (JAD), 2016 WL 368166, at *6-*7 (D. N.J. Jan. 12, 2016) (unreported) (citing cases).

Otter has, thus, sufficiently alleged that Defendants have minimum contacts with Colorado and that Otter's claims arise from those contacts.  This is sufficient to warrant this Court exercising specific personal jurisdiction over Defendants.

Defendants could still avoid litigating in Colorado if they can make a compelling showing that this Court's "exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice."  Old Republic, 877 F.3d at 908-09 (internal quotation marks omitted); see also Shrader v. Biddinger, 688 F.3d 1235, 1240 (10th Cir. 2011).  But Defendants have failed to make such a compelling showing.  Invoking two of the five relevant factors, see Old Republic, 877 F.3d at 909, Defendants argue only perfunctorily that it is a significant burden on them to litigate in Colorado, and that Otter is readily equipped to litigate elsewhere.

Defendants' Rule 12(b)(2) motion to dismiss this action for lack of personal jurisdiction over them is DENIED.

### III. Failure to state a claim

Defendants next seek dismissal of Otter's amended complaint under Rule

12(b)(6) for failing to state any claim upon which relief can be grant.

> To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 540, 570 (2007)).  Because the Court's focus under Rule 12(b)(6) is Otter's

allegations in its complaint, the Court will not consider the documents Defendants have

attached to their motion to dismiss.  See Fed. R. Civ. P. 12(d); see also Waller v. City &

Cty. of Denver, —F.3d—, 2019 WL 3543115, at *3, *6 n.2 (10th Cir. Aug. 5, 2019).

#### A.  Claims 1 & 3: Trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)[4]

---

[4] 15 U.S.C. § 1114 provides in relevant part:

(1) Any person who shall, without the consent of the registrant--

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

> . . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C.A. § 1114.  15 U.S.C. § 1125(a)(1)(A) provides

Otter alleges that Defendants are unlawfully reselling its products.  Defendants defend by invoking the "first sale" doctrine—"the right of the producer [Otter] to control distribution of its trademarked product does not extend beyond the first sale of the product."  Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC, 562 F.3d 1067, 1072 (10th Cir. 2009) (internal quotation marks omitted).  "The essence of the 'first sale' doctrine is that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act."  Id. (internal quotation marks, alteration omitted).[5]  Otter,

_____

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

. . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C.A. § 1125.

[5] To succeed under both its Lanham Act trademark infringement and unfair competition claims, Otter must prove (1) it owns a valid, protectable trademark, (2) Defendants used the trademark in commerce without Otter's consent, and (3) Defendants' use of the trademark causes a likelihood of confusion.  See Derma Pen LLC v. 4EverYoung Ltd.,

however, has adequately alleged two exceptions to the "first sale" doctrine that apply here.

### 1. Defendants are selling materially different products

Otter adequately alleges that the "first sale doctrine" does not apply here because the Otter products Defendants are reselling are materially different than the products Otter distributes.  See Otter Prods, 2019 WL 1403022, at *4-*5.  Specifically, Otter alleges that, because Defendants are not authorized distributors, the Otter products they are reselling are not covered by the limited warranty that Otter offers consumers who buy from Otter or its authorized distributors.  See Beltronics, 562 F.3d at 1072-73 (10th Cir.) (recognizing that "material differences may include the warranties" associated with the goods at issue).[6]

Moreover, Otter sufficiently pled that the lack of the limited warranty is "material" to consumers.  Among other things, Otter alleges that some consumers have complained that Otter products they purchased on the Internet have been defective or of poor quality; Otter's limited warranty provides for the repair or replacement of defective Otter products; when Defendants sell Otter products through their Amazon storefronts, Defendants falsely state that the products they offer come with the

---

773 F.3d 1117, 1120 (10th Cir. 2014).  Defendants' motion to dismiss focuses on the third element.

[6] In arguing for dismissal, Defendants rely on a California district court case, Huf Worldwide, LLC v. Wal-Mart Stores, Inc., No. 16cv751-LAB (WVG), 2017 WL 766794 (S.D. Cal. Feb. 28, 2017).  But Defendants' reliance is misplaced because Huf rejects the Tenth Circuit's Beltronics decision, see Huf, 2017 WL 766794, at *2 n.6.

manufacturer's limited warranty (suggesting Defendants think consumers would deem a warranty material); "Consumers would find it material and relevant to their purchasing decision to know whether an Otter Product they were considering buying was covered by the Otter Warranty," and "[i]f a consumer knew a product did not come with the Otter Warranty, the consumer would be less likely to purchase the product" (Doc. 21 ¶ 130).[78]

### 2. Defendants are reselling Otter products that are not subject to Otter's quality controls

Otter also adequately alleges that the "quality control" exception to the "first sale" doctrine applies here.[9]  Summarizing, Otter alleges, among other things, that it requires

---

[7] For this exception to apply, the difference between products must be material; that is, consumers would consider the difference relevant to their decision whether to buy the product.  See Beltronics, 562 F.3d at 1073.  That determination must be made on a case-by-case basis "and must include an examination of products and the market at issue."  Id. (internal quotation marks omitted).  "Because many factors influence such considerations, the threshold must be kept low to include even subtle differences between products."  Id. (internal quotation marks omitted).  For purposes of ruling on Defendants' motion to dismiss, Otter has sufficiently alleged that

> Consumers would find it material and relevant in their purchasing decision to know whether an Otter Product they were considering buying was covered by the Otter Warranty.  If a consumer knew a product did not come with the Otter Warranty, the consumer would be less likely to purchase the product.

(Doc. 21 ¶ 130.)

[8] Defendants claim that Otter has failed to allege why Amazon's or Defendants' warranty is inadequate.  But Defendants do not cite, and the Court could not find, any allegations in the amended complaint addressing a warranty offered by Amazon or Defendants.  In any event, there is a triable issue whether consumers would deem the manufacturer's warranty material to their purchase.

[9] The District of Colorado has recognized this exception.  See Otter Prods, 2019 WL 1403022, at *4-*5; Adolph Coors Co. v. A. Genderson & Sons, Inc., 486 F. Supp. 131, 134-36 (D. Colo. 1980). A number of circuits have also recognized it.  See Warner-

its authorized distributors who sell Otter products online to identify themselves clearly to consumers so that, if consumers have concerns about the quality or a defect in an Otter product, consumers will know who to contact for assistance; to inspect products they receive from Otter in order to remove from their inventory any defective or damaged good before it reaches a consumer; to store Otter products in specified ways to prevent damage; to ship Otter products themselves, and not to allow third parties to fulfill orders on behalf of the authorized online distributor; and not to repackage Otter products. Defendants, on the other hand, do not follow these quality controls; they sell anonymously on Amazon; they do not maintain their own inventory of Otter products but instead allow Amazon to store the Otter products Defendants are reselling and allow Amazon to fulfill Defendants' orders for Otter products.  Specific consumers have complained that through anonymous online purchases, they have received Otter products that are defective, of poor quality, have been repackaged, and are in "used" condition despite being sold as "new."  Those allegations are sufficient for Otter's "quality control" defense to survive Defendants' Rule 12(b)(6) motion.  See Otter Prods., 2019 WL 1403022, at *2 (D. Colo.).

**B.  Claims 2 and 3: False advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)[10]**

---

Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996), see also, e.g., Trader Joe's Co. v. Hallatt, 835 F.3d 960, 970 (9th Cir. 2016); Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., 988 F.2d 587, 590-92 (5th Cir. 1993); Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 107 (4th Cir. 1991).

[10] 15 U.S.C. § 1125(a) provides in pertinent part:

(a) Civil action

Otter adequately alleged that Defendants falsely advertised that the Otter Products they were reselling came with the Otter limited warranty when they did not.[11] See Otter, 2019 WL 1403022, at *5.  As just explained, Otter sufficiently alleges that the Otter limited warranty is material.

Defendants contend that they did not falsely advertise because, after stating the Otter Products they were selling "Include[] the Otterbox limited lifetime warranty," the

---

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[11] To state a false advertising claim under the Lanham Act, Otter must allege

(1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

Digital Ally, Inc. v. Util. Assocs., Inc., 882 F.3d 974, 978 (10th Cir. 2018) (quotation omitted). And, again, to state an unfair competition claim under the Lanham Act, Otter must also allege that (1) it owns a valid, protectable trademark, (2) Defendants used the trademark in commerce without Otter's consent, and (3) Defendants' use of the trademark causes a likelihood of confusion.  See Derma Pen, 773 F.3d at 1120.

ads stated "(see website for details)" (Doc. 21 ¶ 189).  But Defendants cite no authority

supporting their assertion that that language alone is enough to preclude the ads from

being misleading as a matter of law.  Furthermore, Otter responds that, while its website

explains the warranty that consumers get with Otter products sold by <u>authorized</u>

distributors, Defendants never notify consumers that Defendants are <u>not</u> authorized

distributors.[12]

### C. Claim 4: Trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c)[13]

---

[12] This point is based on Otter's assertion in its responsive pleading opposing Rule
12(b)(6) dismissal rather than specific allegations included in its amended complaint.

[13] Relevant here, § 1125(c) provides:

(c) Dilution by blurring; dilution by tarnishment

(1) Injunctive relief
Subject to the principles of equity, the owner of a famous mark that is
distinctive, inherently or through acquired distinctiveness, shall be entitled
to an injunction against another person who, at any time after the owner's
mark has become famous, commences use of a mark or trade name in
commerce that is likely to cause dilution by blurring or dilution by
tarnishment of the famous mark, regardless of the presence or absence of
actual or likely confusion, of competition, or of actual economic injury.

(2) Definitions

(A) For purposes of paragraph (1), a mark is famous if it is
widely recognized by the general consuming public of the
United States as a designation of source of the goods or
services of the mark's owner. In determining whether a mark
possesses the requisite degree of recognition, the court may
consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of
advertising and publicity of the mark, whether
advertised or publicized by the owner or third
parties.

Otter adequately alleges that its mark Otterbox® is "famous," as required under 15 U.S.C. § 1125(c)(2).  See Otter, 2019 WL 1403022, at *5.  (Doc. 21 ¶¶ 39 (alleging Otter registered Otterbox® in May 2010, and has actively used that mark since that time), 41-45 (alleging consumers "widely" recognize this mark, and associate it with "high quality, reliability, and durable products").)  As previously explained, Otter also sufficiently alleged that Defendants' conduct diluted Otter's trademark by linking it to products of shoddy quality products.

---

> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
>
> . . . .
>
> (C) For purposes of paragraph (1), "dilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

In their motion to dismiss, Defendants rely on the Federal Circuit's explanation of the elements Otter must allege in support of its dilution-by-tarnishment claim:

> (1) it owns a famous mark that is distinctive; (2) the defendant is using a mark in commerce that allegedly dilutes the plaintiff's famous mark; (3) the defendant's use of its mark began after the plaintiff's mark became famous; and (4) the defendant's use of its mark is likely to cause dilution by blurring or by tarnishment.

Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1372 (Fed. Cir. 2012).

12

### D. Claims 5 & 6: Colorado law claims alleging common law trademark infringement and deceptive trade practices under Colo. Rev. Stat. §§ 6-1-1 through 6-1-115

Defendants assert that these two state-law claims should be dismissed "based on the same set of insufficient allegations as [Otter's] Lanham Act claims." (Doc. 23 at 17.) Because the Court has concluded Otter sufficiently alleged each of its Lanham Act claims to survive Rule 12(b)(6) dismissal, so, too, the Court denies Defendants' motion to dismiss these two Colorado law claims.

### E. Claim 7: Colorado claim for tortious interference with contract and business relations

Under Colorado law, "[a] plaintiff cannot be entitled to relief on a claim of intentional interference with contract unless he alleges and proves that the defendant intentionally and improperly induced a party to breach the contract or improperly made it impossible for a party to perform." Warne v. Hall, 373 P.3d 588, 595 (Colo. 2016). Otter adequately alleges that Otter had agreements with its authorized distributors that precluded sales to any unauthorized reseller; Otter informed Defendants of these agreements; Defendants thereafter induced Otter's authorized sellers to sell Otter products to Defendants for resale, contrary to those agreements, by not disclosing Defendants' intent to resell those Otter products; and this has harmed Otter. These allegations are sufficient to survive Rule 12(b)(6) dismissal. Otter Prods., 2019 WL 1403022, at *6; see also Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc., 171 F. Supp. 3d 1092, 1117-18 (D. Colo. 2016) (intentional interference with contract claim

13

based on defendant's misrepresentations to third parties causing them to breach the

contracts).[14]

Defendants further assert that they are absolved of liability based on the

affirmative defense of a competitor's privilege.  But that defense is available only

against claims for interference with prospective contracts or contracts terminable at will.

See Harris Grp., Inc. v. Robinson, 209 P.3d 1188, 1196-97 (Colo. Ct. App. 2009).

Defendants have not shown that defense applies here.

---

[14] This claim is probably the closest to requiring dismissal for failure to state adequately a claim.  Defendants specifically complain that Otter has not alleged any specific purchase Defendants made from a specific authorized Otter distributor, and that Otter failed to allege any "wrongful" (or improper) conduct on Defendants' part.  (Doc. 23 at 18-19.)  As to the alleged improper conduct, the Colorado Supreme Court has indicated that, "[b]ecause it is so clearly dependent upon context and circumstances, we have never attempted to rigidly define 'improper' for all purposes of interference with contract."  Warne, 373 P.3d at 595.  But the Court considers such factors as

> the nature of the actor's conduct, the actor's motive, the interests in the other with which the actor's conduct interferes, the interests being advanced by the actor, the social interests in protecting the freedom of action of the actor and the contractual interest of the other, the proximity or remoteness of the actor's conduct to the interference, and the relation between the parties.

Id. (citing restatement (Second) of Torts § 767 (Am. Law Inst. 1975)).  Considering those factors here, Otter has adequately alleged that Defendants acted improperly in interfering with Otter's contracts with its authorized distributors.  Otter has also alleged the terms of its contracts with its authorized distributors that Defendants induced those distributors to breach.  See Business Payment Systems, LLC v. Business Payment Systems—Rocky Mountain, LLC, which applied New York law to hold that the plaintiff's allegations that it had contracts with "its merchants and business partners" which defendants misappropriated was sufficient to state a claim for intentional interference with a contract.  No. 12-cv-01695-RBJ-KLM, 2013 WL 12192486, at *8-*9 (D. Colo. Feb. 20, 2013) (unreported) (applying New York law).

## IV Conclusion

For the foregoing reasons, the Court DENIES Defendants' Rule 12(b) motion to dismiss.

DONE AND SIGNED this 9th day of August, 2019.

BY THE COURT:

*s/ David M. Ebel*

_____

U. S. Circuit Court Judge

15