IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   19-cv-00626-DME-KLM

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

BIG BIRDS, LLC, DAVE'S MARKET, LLC,
DAVID PAIGE, JUDAH HOLLAND, and
JOHN DOES 1-10, individually or as corporate/business entities,

      Defendants.

BIG BIRDS, LLC and DAVE'S MARKET, LLC,

      Counterclaim-Plaintiffs,

v.

OTTER PRODUCTS, LLC, and
TREEFROG DEVELOPMENTS, INC.,

      Counterclaim-Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiffs' ***Daubert*** **Motion to Exclude Defendants' Expert Robert Wallace** [#84][1] (the "Motion"). Defendants filed a Response [#98] in opposition to the Motion [#84], and Plaintiffs filed a Reply [#102].

---

[1] [#84] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

Pursuant to 28 U.S.C. § 636 (b)(1)(A) and D.C.COLO.LCivR 72.1(c), the Motion [#84] has been referred to the undersigned for disposition. *See* [#86]. The Court has reviewed the briefs, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#84] is **DENIED without prejudice in part and DENIED in part**.

## I. Background

This matter arises out of a trademark infringement dispute related to the sale of cell phone protective cases on the internet, specifically, on Amazon.com ("Amazon"). Plaintiffs manufacture and sell cell phone protective cases under various registered trademarks, including OtterBox® and LifeProof®. *Am. Compl.* [#21] at 10-11. Plaintiffs distribute the cases through their authorized distributors and resellers, and sell directly to consumers through their own website. *Id.* at 10. Defendants purportedly obtain Plaintiffs' products "from various sources" and resell them on Amazon "without Plaintiffs' authorization." *Motion* [#84] at 5. Plaintiffs filed the present suit alleging that Defendants infringe on Plaintiffs' trademarks and cause consumer confusion because "their products are not subject to Plaintiff's [sic] quality controls and are materially different from Plaintiffs' products as they lack Plaintiffs' warranty." *Id.*

Plaintiffs timely disclosed their expert statistician, Dr. Charles Cowan ("Cowan"), who executed a statistical consumer survey for Plaintiffs. *Id.* at 6. The purpose of Dr. Cowan's survey was to "conduct comparisons between consumer expectations when OtterBox products are sold by authorized resellers as opposed to when they are sold by unauthorized resellers such as [Defendants]." *Cowan Expert Report* [#84-8] at 6. Dr.

–2–

Cowan's survey found that (1) Defendants' Amazon storefronts create consumer confusion and cause consumers to falsely believe that Defendants are authorized sellers of Plaintiffs' products, which they are not; (2) Defendants' Amazon storefronts cause consumers to believe that products sold by Defendants include Plaintiffs' warranty; (3) consumers are more likely to purchase Plaintiffs' product which comes with Plaintiffs' warranty; (4) consumers incorrectly believe that Defendants' products are inspected, handled, and shipped according to Plaintiffs' quality control requirements; (5) consumers are more likely to purchase Plaintiffs' product which is inspected, handled, and shipped according to Plaintiffs' quality controls; and (6) Defendants' sale of materially different products bearing Plaintiffs' trademarks harms Plaintiffs through consumer confusion and negative reviews.   *Id.* at 3.

Defendants timely disclosed their rebuttal expert, Robert Wallace ("Wallace"), an expert in brand identity, who critiqued Dr. Cowan's report and executed his own consumer survey to "rebut Dr. Cowan's opinions regarding the materiality of Plaintiffs' alleged warranty and quality controls."   *Motion* [#84] at 6-7; *Response* [#98] at 10.   Mr. Wallace critiqued Dr. Cowan's report on the following six grounds: (1) Dr. Cowan did not screen his respondents from relevant consumers; (2) Dr. Cowan did not have enough respondents; (3) Dr. Cowan failed to include a control group; (4) Dr. Cowan used leading and biased questions; (5) Dr. Cowan's focus on source and consumer confusion are irrelevant; and (6) Dr. Cowan did not show evidence of brand dilution.   *Motion* [#84] at 6-7.   In Mr. Wallace's own consumer survey, he concluded that "the manufacturer's warranty and its quality control procedures do not play a material role in driving consumer

purchase decisions." *Response* [#98] at 10-11. In the present motion, Plaintiffs move to exclude Mr. Wallace's opinions pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Motion* [#84] at 7-8.

## II. Analysis

### A. Timeliness and Local Rule 7.1(a)

At the outset, the Court addresses two procedural arguments raised by Defendants in their Response [#98]. First, to the extent Defendants argue that Plaintiffs' Motion [#84] is untimely, this argument is rejected. *Response* [#98] at 12-13. Although the undersigned has a set deadline for filing motions to exclude expert testimony in cases over which she presides on consent of the parties, that order was not entered in this case because Judge Ebel is the presiding judge. His practice standards do not contain a deadline for filing motions to exclude expert testimony, and the parties did not ask to set one in the Scheduling Order. Thus, because the Motion [#84] was reasonably filed by the dispositive motion deadline, the Court cannot find that the Motion [#84] was untimely.

Second, Defendants argue that Plaintiffs failed to comply with the duty to confer under Local Rule 7.1(a), which provides: "Before filing a motion, counsel for the moving party . . . shall confer or make reasonable, good faith efforts to confer with any opposing counsel . . . to resolve any disputed matter. The moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts to fulfill this duty." In the Motion [#84], Plaintiffs merely state: "Pursuant to Local Rule 7.1(a), Plaintiffs have conferred with Defendants regarding this motion by email and Defendants have indicated that they oppose it." *Motion* [#84] at 5.

It is clear from the Court's review that Plaintiffs have violated Rule 7.1(a). The rule requires counsel to attempt "to resolve any disputed matter." This means that counsel must engage in "meaningful negotiations." *See Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635-36 (D. Colo. 2003) (stating that Rule 7.1(a) "is not satisfied by one party sending a single e-mail [, letter, or voice message] to another party"). At 1:32 p.m. on February 5, 2021, Plaintiffs' counsel sent Defendants' counsel an email stating that they "are going to proceed [with] filing [their] . . . *Daubert* motion." *Response* [#98] at 13. The email did not request Defendants' position on the Motion, which was filed a little more than an hour later, at 2:34 p.m. that same day. *Id.*

Plaintiffs assert that they complied with Rule 7.1(a) by referencing a phone call by their attorney William Kloss, Jr. ("Kloss") to Defendants' attorney Mark Berkowitz, which took place on December 2, 2020. *Reply* [#102] at 3. According to a Declaration [#102-1] filed by Mr. Kloss:

> On December 2, 2020, I had a call with Defendants' counsel Mark Berkowitz in which we discussed settlement, summary judgment, and Plaintiff's current *Daubert* motion. During that call, I informed Mr. Berkowitz that I would be filing both a summary judgment motion and a *Daubert* motion to exclude Defendants' expert Robert Wallace. I expressed to Mr. Berkowitz that I believed that Mr. Wallace was not qualified to give his opinions and that his opinions were not relevant. Mr. Berkowitz disagreed. Mr. Berkowitz also made clear that his clients intended to file a summary judgment motion. Mr. Berkowitz did not express any belief on the December 2, 2020 call that our proposed *Daubert* motion would be untimely or otherwise improper. Our conversation on the issue was quite brief and we had no further conversations regarding the motion.

*Decl. of Kloss* [#102-1] ¶¶ 3-5.

Plaintiffs raise as many as a dozen issues in the Motion [#84], depending on how one groups their wide-ranging arguments. Clearly, there were no "meaningful

–5–

negotiations" about the issues raised in the Motion [#84] during the December 2, 2020 call. *See Hoelzel*, 214 F.R.D. at 635-36. In fact, Mr. Kloss conceded that the conversation on the *Daubert* motion "was quite brief" and the only conversation the parties had about it. *Decl. of Kloss* [#102-1] ¶ 5. Under Rule 7.1(a), "the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement." *Hoelzel*, 214 F.R.D. at 636. That did not happen during this phone call based on the information before the Court.

The February 5, 2021 e-mail also provided no attempt "to resolve any disputed matter" prior to the filing of the Motion [#84]. D.C.COLO.LCivR 7.1(a). Indeed, the Motion [#84] was filed one hour and two minutes later, and there is no indication before the Court that Defendants' counsel responded to or even saw this message before the Motion [#84] was filed. *See Response* [#98] at 13. Thus, there was no opportunity here to confer about the merits of the many issues raised in the Motion [#84]. Further, the Court notes that Plaintiffs state in their Reply [#102] that this email was merely a "reminder" to Defendants that they would be filing the Motion [#84] and that the real conferral was the telephone call discussed above. *Reply* [#102] at 3. This is in direct opposition to their conferral statement made in the Motion [#84], where they said: "Pursuant to Local Rule 7.1(a), Plaintiffs have conferred with Defendants regarding this motion *by email* and Defendants have indicated that they oppose it." *Motion* [#84] at 5 (emphasis added). There is no indication that there was any e-mail other than the February 5, 2021 e-mail, there is no indication that Defendants ever responded to that e-

mail in the hour between when the e-mail was sent and when the Motion [#84] was filed, and there certainly was not time to confer in that one hour about every argument that has been raised in this Motion [#84]. Although the Court makes no such determination at this time, the Court notes that Plaintiffs' conferral statement strays dangerously close to sanctionable conduct based on Plaintiffs' other statements made to the Court; it is difficult, if not impossible, to reconcile all of these statements made to the Court by counsel as an officer of the Court. *See* Fed. R. Civ. P. 11(b).

In addition, Plaintiffs conclusorily assert that conferral would have been futile, and in support point to Defendants' Response [#98] and the fact that "Defendants do not identify any of Mr. Wallace's testimony they might withdraw or other substantive areas where the parties might reach agreement." *Reply* [#102] at 3. Plaintiffs do not say, however, that they believed that conferral *at the time they should have conferred* was futile. Even if they had so stated, they have articulated no basis for any such belief. Regardless, Local Rule 7.1(b) lists several exceptions to Local Rule 7.1(a). "Futility of conferral" is not listed among those exceptions, and no other exception applies here. *See* D.C.COLO.LCivR 7.1(b). In short, Plaintiffs appear to have flagrantly disregarded their obligation under Local Rule 7.1(a).

Failure to comply with the duty to confer under Local Rule 7.1(a) is sufficient grounds, standing alone, on which to deny a motion. *See, e.g.*, *Allen v. Wal-Mart Stores, Inc.*, No. 19-cv-03594-KLM, 2021 WL 4133914, at *3 (D. Colo. Sept. 10, 2021) (denying a motion for sanctions under Rule 37 for failure to confer); *Ordonez v. Marriott Int'l*, No. 20-cv-00541-REB-KLM, 2020 WL 9432907 (D. Colo. June 25, 2020) (denying a motion

to amend the complaint under Rule 15 for failure to confer); *see also Coumerilh v. Tricam Indus., Inc.*, No. 05-cv-02510-MEH-CBS, 2007 437620 (D. Colo. Feb. 5, 2007) (ruling on motions to exclude expert testimony despite the failure to confer but imposing monetary sanctions on the filing party). The Tenth Circuit Court of Appeals has routinely affirmed the trial court's denial of a motion based solely on the moving party's failure to comply with a local rule. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011).

Admission at trial of expert testimony is governed by Fed. R. Evid. 702 and requires a two-step analysis. *103 Investors I, L.P. v Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). "First, the court must determine whether the expert is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." *Id.* (citation omitted). "Second, if the expert is sufficiently qualified, the court must determine whether the opinion is reliable under the principles set forth in *Daubert*." *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). Plaintiffs move to exclude Mr. Wallace from testifying as a rebuttal expert witness at both of these steps. *Motion* [#84] at 1-2.

As noted above, the Court could deny the Motion [#84] in its entirety based on Plaintiffs' failure to comply with Rule 7.1(a). Indeed, to do otherwise would be to reward Plaintiffs' violation of the Local Rules. However, the Court, in its discretion, finds that the best course of action here is to address the issue of qualifications at this time so that the parties may engage in "meaningful negotiations" over the methodology disputes raised by Plaintiffs. In the Court's experience, there is usually very little chance that parties ever reach agreement when they have a fundamental disagreement over whether an

expert is qualified in the first place to opine on any issues in the case. Further, with a ruling on the qualification issue in hand, the parties may be better able to proceed with good faith conferral over each and every issue raised in connection with the methodology used by Mr. Wallace.

Accordingly, pursuant to Local Rule 7.1(a), the Motion [#84] is **denied without prejudice** to the extent Plaintiffs seek to bar Mr. Wallace's testimony on the basis of methodology.

**B. Qualifications**

Plaintiffs contend that Mr. Wallace is "not qualified . . . as an expert in statistics or statistical surveys, like the one conducted by Dr. Cowan[,]" his "expertise in 'brand identity' is insufficient to assess and analyze a statistical consumer confusion survey[,]" and he "knows nothing" about how the Amazon platform functions, which is a central issue to the case. *Motion* [#84] at 8-11. Defendants assert that Mr. Wallace's extensive professional background, experience consulting on numerous cases concerning marketing and branding issues, and qualification as an expert witness "by several federal courts" more than qualify Mr. Wallace to testify as an expert witness to opine on consumer surveys. *Response* [#98] at 8-9. Defendants further note that while Plaintiffs argue that Mr. Wallace has limited experience with the Amazon platform, Plaintiffs' own expert, Dr. Cowan, is only "somewhat" familiar with Amazon, and further, that Mr. Wallace's qualifications in branding and marketing are what pertain to his credentials as an expert, rather than his knowledge of Amazon. *Id.* at 11-12.

The Court notes that the Tenth Circuit has stated that "[t]he decision to exclude

evidence is a drastic sanction." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). Here, the Court finds that Mr. Wallace, by and through his extensive professional experience in branding and marketing consulting, is qualified to opine on Dr. Cowan's statistical consumer survey. *See United States v. Dysart*, 705 F.2d 1247, 1252 (10th Cir. 1983) ("[A] witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto . . . ."); *Wolford v. United States*, 401 F.2d 701, 705 (10th Cir. 1968) (acceptance or rejection of an expert witness' qualifications is a matter within the discretion of the trial court). Any of these qualifications can be sufficient to support a finding that an expert is qualified. *See* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.

Mr. Wallace has over thirty years of work experience in branding and marketing consulting, which has included creating, fielding, and analyzing over one thousand consumer surveys and research projects. *Response* [#98] at 15. Additionally, Mr. Wallace "belongs to several industry groups focused on branding and marketing, has spoken at more than 50 branding industry symposia across the world, has authored a number of peer reviewed articles, co-authored a book on brand identity, and lectured at several respected universities on the impact of brand communications." *Id.* Further, he "has consulted on more than 65 cases concerning intellectual property or marketing/branding issues, and has been qualified as an expert witness by several federal courts." *Id.* As far as academics, he has "a [b]achelor's degree and supplemental business school training." *Id.*

Plaintiffs cite a number of cases to argue that Mr. Wallace's lack of educational

–10–

background in statistics bars him from proffering testimony in rebuttal to Dr. Cowan. *Motion* [#84] at 8. In *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-cv-775-T-24-TBM, 2014 WL 12623025 (M.D. Fla. May 29, 2014), the court excluded the proffered expert's survey where the expert had only designed ten-to-fifteen other surveys. In *Fish v. Kobach*, 304 F. Supp. 3d 1027 (D. Kan. 2018), the court determined that the expert witness was not qualified to testify about a survey's methodology because the expert "failed to demonstrate that he has even general experience with survey design or methodology that would qualify him to testify about [the] survey." In *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), the court excluded an expert's report because his ability to conduct a regression analysis was based on a single statistics course he had taken thirty years prior. In *LifeWise Master Funding v. Telebank*, 374 F.3d 917 (10th Cir. 2004), the court excluded an expert who had no educational background nor professional experience in the relevant field. Here, in contrast, as outlined above, Mr. Wallace has extensive professional experience in branding and marketing and has created and analyzed over one thousand surveys. *Response* [#98] at 15. As noted by Defendants, "Rule 702 does not impose an 'overly rigorous' requirement of expertise." *Estes Park Taffy Co., LLC v. Original Taffy Shop, Inc.*, No. 15-cv-01697-CBS, 2017 WL 2472149, at *2 n.3 (D. Colo. June 8, 2017). "Disputes as to the strength of [an expert's] credentials . . . go to the weight, not the admissibility, of his testimony." *See Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 3268675, at *8 (D. Ariz. June 17, 2020).

Thus, the Court finds by a preponderance of the evidence that Mr. Wallace is

qualified to serve as an expert witness in this case for the purposes discussed above. *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220-21 (D. Colo. 2008) (citing *Daubert*, 509 U.S. at 592). Accordingly, the Motion [#84] is **denied** to the extent that Plaintiffs seek to bar Mr. Wallace's opinions on the basis of his qualifications.

### IV. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#84] is **DENIED without prejudice in part and DENIED in part**, as outlined above.

DATED: September 27, 2021

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge